# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **THADDEUS LAMBERT, et al.** | * |
| Plaintiffs, | * |
| v. | *   Civil No.: **PJM 11-512** |
| **ONEWEST BANK, F.S.B.** | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiffs Thaddeus Lambert ("Thaddeus") and Madeline Lambert ("Madeline," collectively "the Lamberts") have filed this suit against Defendant OneWest Bank, F.S.B. ("OneWest"), alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Maryland Consumer Protection Act, Md. Code Ann., Comm. Law § 13-301 *et seq.*, fraud, and breach of contract, all related to a mortgage transaction. OneWest filed a Motion to Dismiss [Paper No. 11], and after holding a hearing, the Court granted its Motion with respect to all counts except the Lamberts' breach of contract claim. OneWest has now filed a Motion for Summary Judgment [Paper No. 22] as to that remaining claim. For the following reasons, the Court will **GRANT** the Motion.

**I.**

In July 2007, Thaddeus and Madeline, a married couple, purchased a property in Upper Marlboro, Maryland for $525,765. To finance the purchase, Thaddeus obtained a $448,000 loan from IndyMac Bank, F.S.B. ("IndyMac"), predecessor-in-interest of OneWest. Thaddeus is the sole named obligor on the loan note, but Madeline is titled with him as co-owner of the property that secures the loan. A third party, Euclid Mortgage Services, LLC ("Euclid"), was the

mortgage broker for the transaction and assisted the Lamberts with preparation of the loan application documents.

At the time they executed the loan, Thaddeus was earning approximately $40,000 per year as a construction worker and Madeline approximately $35,000 per year as a nurse's assistant, for a combined annual income of about $75,000. According to the Complaint, Euclid made several misrepresentations in connection with the loan transaction without the Lamberts' knowledge. First, it is alleged that Euclid falsely stated on the application that the Lamberts had a combined monthly income of approximately $10,000, or a total of $120,000 per year, as well as assets worth some $651,439, including $500,000 in real estate. Second, Euclid allegedly informed the Lamberts that their monthly mortgage bill would be about $2,500 over a 30-year period. The Lamberts say they realized something was amiss in October 2007 when they received a mortgage bill in the amount of $3,500.

Beginning in 2008, the Lamberts had difficulty making monthly payments on the mortgage because Thaddeus's employer had cut his working hours and the couple had begun to incur expenses associated with the care of elderly family members. Later that year, IndyMac informed the Lamberts that their monthly payment was set to increase again, this time to $3,749.59. In December 2009, Thaddeus lost his job.

At the end of December 2009, the Lamberts applied to IndyMac, then a division of OneWest, for a loan modification. The borrower financial statement the Lamberts completed as part of the application stated that Thaddeus's gross monthly income was $3,076, despite his unemployment, and that Madeline's gross monthly income was $3,040, for a total of $6,116. The Lamberts signed a provision affirming that the information they provided was "an accurate statement" of their "financial status" and that "any action taken by the lender" on their mortgage

would be "made in strict reliance on the financial information provided." The Lamberts also attached copies of two paystubs Thaddeus had received in November 2009 from his previous employer, reflecting his gross monthly income as of that time. Nowhere in the application did they indicate that Thaddeus had been laid off.

Based on the information and documents the Lamberts submitted, OneWest informed them in late February 2010 that they had been approved to enter a trial loan modification plan under the federal Home Affordable Modification Program ("HAMP"). Pursuant to this offer, OneWest directed the Lamberts to make monthly payments of $1,835.96 for a three-month period beginning April 1, 2010. The $1,835.96 figure constituted approximately 31 percent of their supposed total gross monthly income, which they had stated in the application "was $6,116." OneWest also instructed the Lamberts to send copies of several documents to them no later than March 27, 2010, so OneWest could verify their financial information and determine whether to offer them a "permanent loan modification." The list of requested documents included a hardship affidavit for all borrowers, an IRS Form 4506-T for each borrower, and the following: (1) for each borrower who receives a salary or hourly wages, a copy of his or her two most recent pay stubs that show year-to-date earnings; and (2) for each borrower who has income such as social security, disability or death benefits, pension, adoption assistance, public assistance, or unemployment, a copy of a benefits statement or letter from the provider that states the amount, frequency, and duration of the benefit, as well as the two most recent bank statements showing receipt of such payment. OneWest further explained that the Lamberts' verified income would "determine" their eligibility for a permanent loan modification and the final terms of that modification. Once OneWest confirmed the Lamberts' eligibility and

assuming the Lamberts made all trial payments on time, OneWest indicated it would send them the permanent modification agreement.

On March 3, 2010, Thaddeus signed the offer to enter the trial loan modification program. Over the course of next several months, the Lamberts and OneWest exchanged a series of communications regarding the materials OneWest had requested in order to complete its review of their eligibility for a permanent loan modification. Still, at no time did the Lamberts notify OneWest that Thaddeus was unemployed.

On March 10, 2010, OneWest sent Thaddeus a letter stating that it could not complete its eligibility review because he had not forwarded copies of his two most recent paystubs and because he had not provided proof of occupancy. "Failure to comply with this request," the letter warned, could "result in disqualification of eligibility for a loan modification."

On March 17, 2010, the Lamberts' representative, Wayne Branton, sent OneWest copies of (1) paycheck stubs for Madeline dated January 22, 2010, February 5, 2010, February 19, 2010, and March 5, 2010; (2) paycheck stubs for Thaddeus from October and December 2009; and (3) Thaddeus's bank account statement for December 2009 through January 2010. OneWest responded by letter dated April 8, 2010, again stating that it could not complete its eligibility review because Thaddeus had not provided his two most recent paystubs and that failure to comply with the request could result in disqualification for a loan modification.

On April 20, 2010, Branton sent OneWest a fax that attached: (1) a written statement from Madeline authorizing OneWest to use her income to determine eligibility for a permanent loan modification; (2) paycheck stubs for Madeline dated March 19, 2010 and April 2, 2010; (3) a written statement from the Lamberts' son, Thaddeus M. Lambert, authorizing OneWest to use his income to determine his father's eligibility for a loan modification; and (4) two paycheck

stubs for the son, Thaddeus M. Lambert. In early May, OneWest sent Thaddeus the father another letter, informing him that it could not complete its eligibility review because the paystubs he submitted were "dated more than 90 days ago," that the paystubs for his son "were not legible," and that one of the statements did not have the individual's signature. The letter repeated the warning about the consequences of Thaddeus the father's failure to provide the requested documents.

On July 29, 2010, OneWest received a fax that contained: (1) legible paystubs for Thaddeus M. Lambert, the son, dated June 18, 2010, July 2, 2010, July 16, 2010, and July 23, 2010; (2) paystubs for Madeline dated June 11, 2010 and July 9, 2010; and (3) a copy of the Lamberts' Washington Gas account statement dated July 29, 2009. Later that same day, OneWest received another fax that contained a copy of part of Thaddeus the father's bank account statement for June through July 2010, indicating that on July 8, 2010 he had received $357.30 in unemployment benefits.

On August 4, 2010, OneWest received two more faxes. The first contained the following: (1) a form signed by Thaddeus and Madeline authorizing the release of information about their property and mortgage to GMA Modification Corp.; (2) a written statement from Madeline authorizing OneWest to use 100% of her income for the loan modification since she was living on the property; (3) a written statement from Thaddeus M. Lambert the son authorizing OneWest to use fifty percent of his income for the loan modification since he was living on the property; (4) duplicate copies of Madeline's paystubs included in the July 29 fax; (5) duplicate copies of Thaddeus M. Lambert the son's paystubs included in the July 29 fax; (6) a duplicate copy of the Washington Gas account statement; and (7) a copy of part of Thaddeus the father's bank account statement for June through July 2010, showing that he had received

$357.30 on both June 16 and July 8. The second fax on August 4 contained these same documents.

On August 11, 2010, OneWest advised Thaddeus by letter that all of the documents he forwarded had been accepted with the exception of *his* paystubs. "The paystubs that you recently submitted were dated more than 90 days ago," the letter read. "Please submit copies of your two most recent paystubs." The letter added that Thaddeus needed to resubmit the paystubs by August 25, 2010 "to continue to be considered" for a permanent loan modification.

At some point that month, the Lamberts faxed OneWest a copy of a letter dated July 12, 2010 from the Social Security Administration to Thaddeus. The letter explained that he was entitled to monthly retirement benefits in the amount of $1,151 starting on September 15, 2010.

In a letter dated August 13, 2010, OneWest informed Thaddeus: "We are unable to offer you a Home Affordable Modification because you did not provide us with the documents requested. A notice which listed the specific documents we needed and the time frame required to provide them was sent to you more than 30 days go." Although the letter was marked August 13, the Lamberts allege that they did not receive it until November.

In December 2010, OneWest wrote to Thaddeus and again explained why it had denied his application for a permanent loan modification. OneWest then requested that Thaddeus submit various forms and documents so that it could consider his "loan for a permanent workout solution." On December 28, 2010, the Lamberts sent OneWest a copy of a written determination by the State of Virginia that Thaddeus was entitled to receive $372 per week in unemployment compensation for a maximum benefit amount of $7,142.40.

The Lamberts filed the instant suit on February 25, 2011. OneWest moved to dismiss the Complaint, and after hearing oral argument, the Court issued an Order granting the Motion with

respect to the Lamberts' various federal and state claims except breach of contract. As to that count, the Court directed OneWest to file a motion for summary judgment. That Motion is now before the Court.

## II.

### A.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court, however, must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Summary judgment is appropriate where a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. There must be sufficient evidence for a reasonable jury to find for the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252

(1986), and a "mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

**B.**

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001) (citing *Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)).

**III.**

The Lamberts argue that OneWest agreed to a binding contract pursuant to the HAMP trial loan modification plan and breached that contract. Under the terms of the plan, the Lamberts allege, once they made periodic payments and submitted certain documents to verify their income, OneWest would determine their eligibility for a permanent loan modification. They claim that they satisfied these conditions—they made all the monthly payments and provided all the necessary paystubs, tax documents, unemployment statements, and other information. Despite this, they submit, OneWest refused to evaluate their application simply because Thaddeus failed to substantiate his employment income. In doing so, the Lamberts' claim, OneWest ignored the fact that they had furnished documents showing other sources of verified income, thereby breaching the agreement.

The Court assumes for the purposes of this case that the trial loan modification plan was an enforceable contract and that under its terms OneWest had an obligation to evaluate the Lamberts' eligibility for a permanent modification. The question, however, is whether the Lamberts satisfied the initial requirements of the trial plan, thereby triggering this obligation. The Court concludes, as a matter of law, that because the Lamberts failed to provide OneWest

with the necessary and appropriate documents, OneWest was entitled to deny their application without having to otherwise evaluate their eligibility for a permanent loan modification.

Under the terms of the HAMP trial loan modification plan Thaddeus signed on March 3, 2010, "each borrower" who received "a salary or hourly wages" was required to submit "a copy of his or her two most recent pay stubs that show year-to-date earnings." Because Thaddeus lost his job in December 2009, he no longer received "a salary or hourly wage." Yet on their application for the trial plan, the Lamberts' represented that Thaddeus was still employed, specifically that his gross monthly income was $3,076, attaching paystubs from November 2009 before he was laid off to substantiate his earnings. These clear misrepresentations led OneWest to believe not only that Thaddeus continued to be employed as a construction worker, but also that he was the higher earning spouse. With Madeline's wages, the Lamberts claimed that their combined gross monthly income totaled $6,116.

The Lamberts conveniently overlooked the provision of the application stating that the information they supplied was "an accurate statement" of their "financial status." OneWest had offered the trial plan to the Lamberts "in strict reliance on the financial information provided." OneWest Manager Rebecca Marks avers in her affidavit, which the Lamberts do not dispute, that the company would not have extended the offer if the Lamberts had only reported Madeline's gross monthly income of $3,040.

The Lamberts never undertook to advise OneWest that Thaddeus was unemployed. Their submission of paystubs from an earlier period when Thaddeus was working was clearly intended to mislead OneWest. OneWest promptly advised the Lamberts by letter that it could not complete its eligibility review without recent paystubs, warning that "[f]ailure to comply with this request" could "result in disqualification of eligibility for a loan modification." On April 8,

May 5, and August 11, 2010, OneWest sent Thaddeus reminders about the missing paystubs and the consequences of not providing them. Still, Thaddeus never sent the required paystubs, forwarding instead the same outdated ones from the time of his last employment. Never did the Lamberts explain to OneWest that Thaddeus lost his job in December 2009 and was unemployed. Never did they correct the false impression upon which OneWest was entitled to rely. OneWest was well within its rights to deny the Lamberts' application for a permanent loan modification.

The Lamberts assert that OneWest should have overlooked Thaddeus's failure to submit recent paystubs because they provided OneWest with proof of other sources of income. The argument is entirely unpersuasive. No provision of the trial plan allowed the applicant to determine what documents he could submit to substantiate his financial situation. Nor did any provision oblige OneWest to consider the income of an outside party—the Lamberts' son Thaddeus M. Lambert—in deciding whether to then grant a permanent loan modification. OneWest had a legitimate interest in verifying the income of Thaddeus the father, the sole obligor on the loan note and the spouse who claimed the higher earnings. Since OneWest could hold Thaddeus personally liable for any default on the loan, establishing that he had ample income ensured OneWest would be able to recover a larger portion of its loan in the event of default. By contrast, Thaddeus M. Lambert the son had not signed the loan note and was not a joint owner of the property that secured the loan. OneWest would have had little recourse against him in the event of default.[1]

The Lamberts also contend that Thaddeus submitted ample documentation of his alternate sources of income. Pursuant to the terms of the trial plan, "each borrower who has

---

[1] Even if OneWest had considered half of Thaddeus M. Lambert the son's income in addition to Madeline's, the combined total would still have fallen well short of $6,116.

income such as social security, . . . public assistance, or unemployment," must provide "a copy of a benefits statement or letter from the provider that states the amount frequency, and duration of the benefit, as well as the two most recent bank statements showing receipt of such payment." Thaddeus did not comply with these express provisions. He never forwarded the necessary papers for his unemployment compensation or Social Security benefits before OneWest terminated consideration of his application for a permanent loan modification. With respect to unemployment compensation, while Thaddeus submitted bank statements showing receipt of payments in June and July 2010, he did not provide the State of Virginia's written determination on eligibility until December 28, 2010, well after OneWest's decision to reject the application. As for retirement benefits, the Lamberts sent OneWest the July 12, 2010 letter from the Social Security Administration around the same time that OneWest rejected their application for a permanent loan modification. The letter stated that Thaddeus was entitled to $1,151 per month starting on September 15, 2010. Thaddeus failed to provide OneWest with any bank statements demonstrating receipt of those benefits.

Throughout the trial plan period, OneWest made clear to the Lamberts over and over again that their verified income would determine their eligibility for a permanent loan modification. Because the Lamberts failed to provide OneWest with the documents required under the terms of the plan and in fact misrepresented their financial situation, OneWest could fairly conclude that it was unable to verify their income and determine their eligibility. As a matter of law, the Lamberts, not OneWest, breached the terms of the trial plan.

**IV.**

For the foregoing reasons, the Court will **GRANT** OneWest's Motion for Summary Judgment [Paper No. 22].

-12-

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

**April 30, 2012**